# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5167 | **DATE** | 1/23/2003 |
| **CASE TITLE** | JOSEPHINE A. GRODESKY vs. LUCENT TECHNOLOGIES,INC.,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: defendants' motion for summary judgment is denied. This case is remanded to the plan administrator with instructions to receive evidence and make a determination regarding plaintiff's eligibility for a survivor annuity. This case is dismissed without prejudice, with leave to reinstate within 30 days after administrative remedies have been exhausted in accordance with the Lucent Technologies Pension Plan.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | *number of notices* | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JAN 27 2003 | | |
| ✓ | Docketing to mail notices. | | *date docketed* | | 31 |
| | Mail AO 450 form. | | | | |
| ✓ | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | *docketing deputy initials* | | |
| TBK | *courtroom deputy's initials* | 03 JAN 24 PM 9:36 | *date mailed notice* | | |
| | | Date/time received in central Clerk's Office | *mailing deputy initials* | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JAN 2 7 2003

| | | |
|---|---|---|
| JOSEPHINE A. GRODESKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 5167 |
| | ) | Paul E. Plunkett, Senior Judge |
| LUCENT TECHNOLOGIES INC. d/b/a | ) | |
| LUCENT TECHNOLOGIES PENSION PLAN, | ) | |
| AS SUCCESSOR TO AT&T PENSION PLAN | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is brought under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Josephine Grodesky has sued Lucent Technologies Inc. ("Lucent") and the Lucent Technologies Pension Plan ("LTPP") for survivor annuity benefits, claiming she is entitled to these benefits because she never signed the LTPP's Declination of Survivor Annuity form. Defendants have filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on plaintiff's claim. For the reasons set forth below, the motion is denied. We dismiss this case without prejudice with leave to reinstate.

## <u>Facts</u>

Unless otherwise noted, the following facts are undisputed. Edward Grodesky ("Edward") was an employee of one of Lucent's corporate predecessors, AT&T, from February 1956 until his retirement on October 30, 1990. (Def.'s LR 56.1(a)(3) Stmt. ¶ 4.) Edward died on March 10, 1999.

31

(*Id.* ¶ 3.) Until the time of Edward's death, Josephine Grodesky[1] was his spouse. (*Id.*) When Edward retired, the AT&T Pension Plan, a defined benefit plan governed by ERISA, was in effect. (*Id.* ¶ 6.) In 1996, the LTPP, also an ERISA-governed defined benefit plan, became the successor to the AT&T Pension Plan. (*Id.*)

Lucent is the "plan administrator" of the LTPP and has appointed an Employee Benefits Committee ("EBC") to administer the LTPP. (*Id.* ¶ 7.) The EBC has "sole and complete discretionary authority" to administer the plan and determine eligibility for benefits. (*Id.* ¶ 11; Def.'s Mot. Summ. J. Ex. 18(I) ¶ 3.4.) This discretionary authority covers a wide range of areas,

> including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any participant, spouse or beneficiary . . . .

(Def.'s Mot. Summ. J. Ex. 18(I) ¶ 3.4.) The EBC has delegated some of its authority to a Pension Plan Administrator ("Administrator"). (Def.'s LR 56.1(a)(3) Stmt. ¶ 7.) The EBC and the Administrator have authority to grant or deny claims for benefits under the LTPP. (*Id.*) The EBC serves as the final review committee for appeals by participants whose initial claims for benefits have been denied, in whole or in part, by the Administrator[2]. (*Id.* ¶ 8.)

---

[1] Josephine Grodesky passed away on July 29, 2002. A suggestion of death was filed on August 13, 2002. We refer to Josephine Grodesky as plaintiff.

[2] Plaintiff disagrees that the EBC has authority over plaintiff's claim. Plaintiff claims the LTPP documents suggest that appeals from certain denials should be made to the AT&T employee benefits committee. The documents state that appeals from certain denied claims relating to participants in and beneficiaries of Former Affiliate Plans are not made to the EBC, but rather are made to "the comparable committee of the Former Affiliate Plan in accordance with the provisions thereof." (Def.'s Mot. Summ. J. Ex. 18(I) ¶ 3.3.) The list of Former Affiliates, however, does not include AT&T. (Def.'s Reply Summ. J. Ex. A ¶ 2.12.) The documents do not support plaintiff's position on this point.

The LTPP Summary Plan Description ("SPD") instructs claimants to send written claims regarding pension matters to the Administrator. (Def.'s Mot. Summ. J. Ex. 18(J) at 60.) It also informs claimants that they must appeal, in writing, a denied benefit claim within 60 days of receiving the Administrator's written denial of the claim. (*Id.* at 61.) Written requests for review of the Administrator's decision are to be sent directly to the EBC. (*Id.*)

When Edward retired from AT&T, he became eligible to receive a pension under the AT&T Pension Plan. (Def.'s LR 56.1(a)(3) Stmt. ¶ 12.) The AT&T Pension Plan required employees to accept or decline a survivor annuity option. (*Id.* ¶ 13.) Accepting the survivor annuity results in the reduction of an employee's monthly pension payment by certain amount during the employee's lifetime. (*Id.*) After the employee's death, his surviving annuitant receives 50% of the employee's monthly pension payment during the annuitant's lifetime. (*Id.*) Declining the survivor annuity results in the employee receiving the full amount of his monthly pension payment during his lifetime. (*Id.*) After his death, his surviving spouse will not receive any pension payments. (*Id.*) An election to waive the survivor annuity requires the consent of the employee's spouse in writing and witnessed by a notary public. (*Id.* ¶ 14.) After a certain defined period of time, the survivor annuity election becomes irrevocable. (*Id.* ¶ 15.)

In late 1990, Edward submitted a completed Employee's Election or Declination of Survivor Annuity ("Declination"), dated October 7, 1990, containing the apparent signatures of both Edward and plaintiff[3] and the notarized seal of J.J. Shea, Jr., a notary public. (*Id.* ¶ 18; Def.'s Mot. Summ. J. Ex. 3.) On November 1, 1990, after his retirement, Edward began receiving his full monthly

---

[3] Plaintiff asserts that the signature attributed to her is a forgery.

pension of $ 1,198.34, and received periodic increases over the years. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 22, 23.) The period for revoking the declination expired on January 7, 1991. (*Id.* ¶ 20.)

Plaintiff asserts she had no knowledge of the Declination until February 1999, when she found it among Edward's papers. (Pl. Dep. at 69-74.) At that time, Edward was dying of cancer. (*Id.*) Plaintiff discussed the form with her husband and knew that she would not be eligible for the survivor annuity, but prior to her husband's death, she never asked him to contact Lucent to revoke the Declination. (Def.'s LR 56.1(a)(3) Stmt. ¶ 26; Pl. Dep. at 90.)

During the months following Edward's March 1999 death, plaintiff communicated numerous times with Lucent regarding her husband's pension account. In the course of this communication, she never submitted a written claim for survivor benefits. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 30-32.)

On July 26, 2000, plaintiff, through her counsel, sent a letter to Linda Cardone, Supervisor, Survivor Affairs at Lucent Technologies Pension Service Center, stating that she was not aware of the Declination until almost before Edward's death, and that, due to his poor condition, "it was too late to change the Election". (*Id.* ¶ 33; Def.'s Mot. Summ. J. Ex. 13.) Plaintiff requested that the Pension Center "review this matter, vacate the fraudulent Declination and permit [her] to elect a Survivor Annuity." (Def.'s Mot. Summ. J. Ex. 13.) Along with a copy of the Declination, plaintiff included copies of a 1989 federal tax return dated March 15, 1990 and checks dated November 14, 1984 and November 30, 1985 as exemplars of her true signature. She noted in her letter that the signature on the Declination differed from the others enclosed. (*Id.*)

On August 17, 2000, Cardone sent a copy of Edward's record to Nancy Edmond, who served on the EBC, and asked her to make a determination "of Mrs. Grodesky's appeal." (Pl.'s Resp. Mot. Summ. J. Ex. 1.) It is not clear from the letter whether plaintiff's letter and handwriting samples

were also forwarded to Edmond. The EBC forwarded plaintiff's claim for benefits to the Administrator. (Def.'s LR 56.1(a)(3) Stmt. ¶ 34.) On December 4, 2000, Linda LaForge, Senior Manager of Lucent's Pension Plan Administration Department, responded to plaintiff's counsel by letter, explaining that the election period had expired, and thus the Declination was irrevocable. (*Id.* ¶ 35.) The letter explained Lucent's position:

> . . . where a signature is properly notarized, the burden of proof regarding any claim of forgery on a Survivor Annuity declination rests with the surviving spouse. If you can obtain a court order stating that the signature is indeed a forgery and that the declination should be null and void, we would then cancel the survivor annuity declination . . . .

(Def.'s Mot. Summ. J. Ex. 18(D).)

On February 14, 2001, plaintiff's counsel contacted LaForge directly and enclosed an affidavit signed by plaintiff, stating her signature on the Declination was forged. (Pl. Dep. at 147.) In her letter, plaintiff's counsel requested reconsideration of Lucent's position and the involvement of Lucent's legal staff. The letter also stated "[i]t may be necessary for [plaintiff] to pursue the legal route" unless plaintiff received a survivor annuity. (Def.'s Mot. Summ. J. Ex. 18(E).) Apparently, this letter went unanswered. On April 16, 2001, plaintiff's counsel sent another letter to LaForge, enclosing a copy of the February 14, 2001 letter to LaForge and requesting that LaForge respond, or at least provide the name of someone in Lucent's legal department. (*Id.*) LaForge responded on May 15, 2001, reiterating Lucent's position regarding the survivor annuity, again stating that if plaintiff obtained a court order declaring the signature a forgery and that the Declination should be

null and void, the Declination would be cancelled and plaintiff would receive a survivor annuity[4]. (Def.'s Mot. Summ. J. Ex. 18(F).)

Plaintiff never sent a written request to the EBC asking for a review of LaForge's action. (Def.'s LR 56.1(a)(3) Stmt. ¶ 40.) Plaintiff filed a Complaint for Declaratory Relief in the Circuit Court of Cook County, Illinois, on June 8, 2001. (Pl.'s Resp. Mot. Summ. J. Ex. 4.) She claimed she was entitled to receive a survivor annuity because, as her signature was forged, she never made an election under 29 U.S.C. § 1055(c)(2) to waive her entitlement to the annuity. The case was removed to this court. Defendants have moved for summary judgment, claiming that plaintiff never exhausted her administrative remedies and that the Administrator's decision to require plaintiff obtain a court order was not arbitrary and capricious.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

---

[4] According to LaForge, plaintiff would have to reimburse Lucent for the cost for providing survivor annuity coverage.

## Discussion

Section 502(a)(1)(B) of ERISA allows a beneficiary to bring a civil action "to recover benefits due to [her] under the terms of [the] plan." 29 U.S.C. § 1132(a)(1)(B). ERISA is silent, however, as to whether a plaintiff is required to exhaust his or her administrative remedies before bringing suit. *Robyns v. Reliance Standard Life Insurance Co.*, 130 F.3d 1231, 1235 (7th Cir. 1997). It is well-settled in this circuit, however, that a district court may require that a plaintiff have exhausted his or her remedies before bringing a claim alleging an ERISA violation. *Id.* Failure to exhaust administrative remedies may be excused (1) if plaintiff was denied meaningful access to review procedures or (2) if exhaustion of internal remedies would be futile. *Id.*

Plaintiff argues that she has exhausted her administrative remedies. Because plaintiff twice received the same response from Lucent, plaintiff claims that she could go no further administratively, and, by filing this suit, did as she was instructed by Lucent. In addition, plaintiff claims she was never instructed to appeal to the EBC or to any other equivalent body.

In the alternative, plaintiff seeks to fall under the two exceptions to the administrative remedy exhaustion requirement. She claims that she was denied meaningful access to review procedures because Lucent failed to consider her claim, and that, faced with two iterations of Lucent's position, any additional request for review would have been futile.

Defendants argue that LaForge's letter to plaintiff was a denial of benefits, and that, consistent with the terms of the LTPP, plaintiff should have submitted a written appeal to the EBC. Because plaintiff did not appeal to the EBC within the 60-day deadline, defendants argue, she has failed to exhaust her administrative remedies and her claim fails as a matter of law. Both parties then

go on in their respective memoranda of law to argue whether or not the Administrator's action was arbitrary and capricious.

We find that the exhaustion requirement is inapplicable in plaintiff's case because there was never a decision from which she could appeal to the EBC – her claim was never denied and the Administrator's action was unappealable. First, the Administrator did not make clear that it was, in fact, denying plaintiff's claim. *See* 29 U.S.C. § 1133(1) (requiring adequate notice for claim denials "written in a manner calculated to be understood by the participant"). The SPD states that if a claim is denied in whole or in part, the claimant will receive a written notice of the Administrator's decision. The written notice will include:

- The specific reason(s) for the denial;
- Reference to the specific Pension Plan provisions, statutes or regulations on which the denial was based;
- A description of any additional material or information necessary to perfect the claim and an explanation of why the material or information is necessary, and
- Information about the steps to be taken if you, your dependent, or an authorized representative wishes to submit the claim for review.

(Def.'s Mot. Summ. J. Ex. 18(J) at 60.) *See also* 29 C.F.R. § 2560.503-1(f). LaForge's letters did not conform to Lucent's own denial notice requirements. Neither of LaForge's letters expressly stated the claim was denied and they never suggested that any consideration was given to the handwriting samples submitted by plaintiff. Although LaForge did explain that Lucent gives a facially valid declination form a presumption of validity, neither letter provided the last piece of information specifically mentioned in the SPD – the steps to be taken (here, a written appeal to the EBC) if plaintiff wished to submit her claim for review. To the contrary, LaForge's letters indicated

that the Administrator found plaintiff would be entitled to a survivor annuity upon submission of an additional document.

Defendants argue that plaintiff should have appealed the Administrator's instruction to obtain a court order to the EBC. However, we are not convinced that the EBC could have considered such an "appeal" by plaintiff. The SPD states:

> A claimant can appeal a denied claim if:
> - No reply at all is received from the . . . Administrator . . . after 90 days,
> - The . . . Administrator . . . has extended the response time by an additional 90 days, and no reply is received within that time, or
> - Written denial of the claim is received within the appropriate time frame and the claimant wants to appeal.

(Def.'s Mot. Summ. J. Ex. 18(J) at 61.) The expanded LTPP document states:

> the [EBC] shall serve as the final review committee, under the Plan and ERISA, for the review of all appeals by participants whose initial claims for benefits have been denied, in whole or in part, by the . . . [Administrator].

(Def.'s Mot. Summ. J. Ex. 18(I) ¶ 3.3.) The LTPP documents provide the EBC with the authority to review *denied* claims, and, as discussed previously, LaForge's letters failed to adequately communicate that the claim was denied. There is no provision in the SPD or the expanded LTPP document that provides for a review of the Administrator's stayed decision, or a request for additional information. Defendants' position that the Administrator denied plaintiff's claim and that she failed to exhaust her administrative remedies is not supported by the record.

Defendants argue that they are still entitled to summary judgment because it was not arbitrary and capricious for the Administrator to require plaintiff to obtain the court order[5]. Arbitrary and capricious review is only appropriate where the benefit plan grants discretionary authority to the plan fiduciary to determine benefit eligibility and the plan fiduciary denies benefits. *See Allison v. Dugan*, 951 F.2d 828, 832 (7th Cir. 1992) (discussing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). While the parties here agree that the LTPP gives the plan administrator such discretion, a basic requirement for applying this standard is still missing – a denial of benefits.

Arbitrary and capricious review presupposes that a plan administrator has exercised its broad discretion in deciding a benefits matter. Only by exercising this discretion can Congress' intent – that fund trustees, and not the courts, have primary responsibility for administering benefit claims – be realized. *See Schultz v. The Quaker Oats Co.*, 1999 WL 90629, at *3 (N.D. Ill. Feb. 9, 1999) (discussing *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231 (7th Cir. 1997)). The plan administrator's actions here, *i.e.*, failing to make a decision about benefits eligibility and involving the courts in the initial eligibility decision, defeats Congress' intent and the purpose of the arbitrary and capricious review standard. The EBC and the Administrator have the requisite authority to decide factual matters, including whether the Declination form is valid and whether plaintiff is eligible for the survivor annuity.[6] *See Lombardo v. United Technologies Corp.*, 1997 WL 289669,

---

[5] We take this opportunity to note that the Administrator's instruction to obtain a court order does not give plaintiff many options. In order for her to obtain a court order declaring her signature a forgery, she must hang her request on some cause of action. Any claim about the validity of the Declination would, however, be in connection with a claim for benefits and would be decided in the ERISA context. *See Tinsely v. General Motors Corp.*, 227 F.3d 700, 703-04 (6th Cir. 2000).

[6] Section 3.4 of the expanded LTPP document gives the EBC the "sole and complete discretionary authority . . . to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits . .

at *6 (D. Conn. May 7, 1997). Defendants cannot rely on the grant of broad discretion, given to them under the law so that they will make a benefits decision, to now cloak them with the protection of a deferential review standard for their failure to exercise that discretion. That would defeat the purpose of the arbitrary and capricious review standard[7]. Thus, we decline to review the Administrator's action under this, or any other, standard.

Finding that (1) the exhaustion of administrative remedies requirement does not apply to plaintiff and (2) the actions of the plan administrator are not reviewable at this point, we remand this case to the plan administrator of the LTPP and instruct the plan administrator to receive appropriate evidence and make a determination regarding plaintiff's eligibility for a survivor annuity[8]. *See Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 477-78 (7th Cir. 1998) (finding it an appropriate remedy in ERISA matters to send a case back to a tribunal for further proceedings when there was a failure to make adequate findings); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1997) (same).

---

. .." (Def.'s Mot. Summ. J. Ex. 18(I) ¶ 3.4.)

[7] We note that the plan administrator should have investigated plaintiff's claim of forgery. Once on notice of the alleged forgery, the plan administrator had a duty to at least make an inquiry. *See Lombardo*, 1997 WL 289669, at *5-6 (criticizing the committee's failure to look beyond the notarized consent form and the committee's position that it was not " 'authorized' to evaluate authenticity of a notarized document"); *Rice v. Rochester Laborers' Annuity Fund*, 888 F. Supp. 494, 498 (W.D.N.Y. 1995) (discussing Congress' intent to protect spouses' interests in participants' benefits and a plan administrator's obligation to inquire under certain circumstances). Instead the plan administrator shirked its obligations and fiduciary duty to plaintiff by refusing to investigate her claim.

[8] This court has no opinion regarding the merits of plaintiff's claim.

## Conclusion

For the reasons set forth above, defendants' motion for summary judgment is denied. This case is remanded to the plan administrator with instructions to receive evidence and make a determination regarding plaintiff's eligibility for a survivor annuity. This case is dismissed without prejudice, with leave to reinstate within 30 days after administrative remedies have been exhausted in accordance with the Lucent Technologies Pension Plan.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** January 23, 2003